## In re VOCKE.

### (District Court, W. D. Kentucky. January, 1917.)

1. BANKRUPTCY ⬤⟿288(1)—SUMMARY PROCEEDINGS BY TRUSTEE—ADVERSE CLAIMANTS.

A licensed saloon keeper, being unable to pay for his state and city licenses as they became due, applied to the C. Company for a loan with which to pay therefor, and pledged the licenses to that company as surety for the indebtedness, at the same time giving its secretary a power of attorney to sell them and apply the proceeds to the payment of such debt. Thereafter, and before he became bankrupt, his landlord sold his stock and fixtures under a distress warrant and the C. Company became the purchaser. That company sold the stock and fixtures to the claimant, and also assigned the licenses to him. The claimant procured an assignment of the state license by the state authorities, and surrendered the city license to the city authorities, which issued a new license to him in the place thereof. *Held*, that the trustee's right to such licenses should be tried out in a plenary action, and not in a summary proceeding upon rule to show cause, as his right to the licenses depended upon important and far-reaching questions, and the claim of the claimant was not merely colorable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

2. BANKRUPTCY ⬤⟿302(2)—PROCEEDINGS BY TRUSTEE—PLEADING.

A response by the claimant to a rule to show cause was sufficient, where it set up the facts as to its acquisition of the licenses and the surrender thereof to the state and city authorities in exchange for new licenses, as it could not be required to surrender licenses which it did not have the power to surrender.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 456.]

3. BANKRUPTCY ⬤⟿288(1)—SUMMARY PROCEEDINGS—ADVERSE CLAIMS.

When it developed that the claimant made an adverse claim to the licenses, which was not merely colorable, the referee should have discharged the rule, as he had no jurisdiction to determine the issues.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

In Bankruptcy. In the matter of August H. Vocke, bankrupt. On review of an order of the referee. Order reversed.

Gifford & Steinfeld, of Louisville, Ky., for trustee.

Kohn, Bingham, Sloss & Spindle, of Louisville, Ky., for petitioners.

EVANS, District Judge. A. R. Cooper, the trustee of this bankrupt, in November, 1916, filed a petition before the referee, asserting that the bankrupt had a license issued by the city of Louisville and one issued by the state of Kentucky to conduct a saloon business in this city, neither one of which had expired on September 2, 1916, when the adjudication was made. It appears that the license showed that the business was to be conducted at 106 South Fourth street. The trustee showed that, prior to his election as such, a corporation, styled "Jul's Café," had been created under the law of Kentucky, and this corporation had purchased the bankrupt's place of business from the Central Consumers' Company, which had attached it for rent before the adjudication, and subsequently had it sold under the attachment, and that the respondent, Jul's Café, had taken possession of the licenses in the

saloon without right and without paying the trustee the value thereof. The trustee asserted that the licenses were his property, and that he was entitled to have possession of them. He thereupon prayed the referee to enter an order directing Jul's Café to show cause why it should not surrender the licenses. The referee issued the rule as prayed for. The Jul's Café responded as follows:

"The respondent, Jul's Café, for response to the order entered herein requiring it to show cause, if any it has or can, why it shall not turn over to the trustee herein the licenses mentioned in said order, states that it has not in its possession or under its control any of the licenses referred to in said order, and that the only licenses which it has in its possession are the licenses that were assigned to it by the state of Kentucky and Jefferson county, or issued to it by the city of Louisville, authorizing it to conduct a saloon at 106 South Fourth street, in Louisville, Ky., and that it acquired the said licenses in the following manner, to wit: It states that, prior to the adjudication of the said August Vocke a bankrupt, he was engaged in the business of operating the said saloon at 106 South Fourth street; that he got behind in his rent and a distress warrant was sued out by his landlord and levied upon the stock and fixtures contained in said saloon; that a sale was made under the said distress warrant, and the Central Consumers' Company became the purchaser of said stock and fixtures, and afterwards this respondent bought the said stock and fixtures from the said Central Consumers' Company. It states that at the time it also bought from the Central Consumers' Company the state and city licenses that had been issued to the said August H. Vocke authorizing him to conduct a saloon at said 106 South Fourth street.

"Respondent states that it is informed and believes and charges the fact to be that the Central Consumers' Company acquired the said licenses from the said Vocke under the following circumstances, to wit: That in May, 1916, when his state license became due, the said Vocke was unable to pay for said licenses and applied to said Central Consumers' Company for assistance in obtaining them; that the said Central Consumers' Company thereupon advanced to said Vocke the money to pay for said state license, and simultaneously with the said advance or loan the said Vocke pledged the said state license to said Central Consumers' Company as security for the repayment of said advance, and at the same time executed and delivered to Charles P. Dehler, the secretary of said Central Consumers' Company a power of attorney in and by which he authorized the said Dehler 'to indorse, sell, and deliver the said licenses,' and 'to collect and receive the proceeds of said licenses,' and to apply the proceeds of said licenses to the payment of the said advance made to him by said Central Consumers' Company. It states that likewise, in August, 1916, the said Vocke's city license became due and he was unable to pay for same, and again he applied to the Central Consumers' Company for assistance, and that said Central Consumers' Company thereupon advanced to said Vocke the money to pay for said city license, and simultaneously with said advance or loan the said Vocke pledged to the said Central Consumers' Company the said city license as security for the repayment of said advance, and at the same time executed and delivered to Charles P. Dehler, the secretary of said Central Consumers' Company, a power of attorney in and by which he authorized and empowered the said Dehler 'to indorse, sell, and deliver the said licenses,' and to collect and receive the proceeds of sale thereof, and to apply the proceeds of sale to the payment of said advance made to him by said Central Consumers' Company.

"Respondent states that said licenses, state and city, issued to the said Vocke as aforesaid, were assigned and transferred to this respondent by the said Charles P. Dehler under the authority vested in him by the two powers of attorney above mentioned, and that the said state license was duly assigned to this respondent by the proper authorities of the state of Kentucky; that the said city license was surrendered by this respondent to the city of Louisville, and there was issued to this respondent by the proper authorities of said city new licenses in the name of this respondent, authorizing it to con-

duct the saloon business at said place, and these licenses assigned to it as aforesaid and issued to it in its name are the only licenses in the possession of this respondent or under its control. Respondent further states that it is informed and believes, and charges the fact to be, that the value of said state and city licenses issued to said Vocke as aforesaid at the time of their sale to this respondent by said Central Consumers' Company and the amount paid therefor by this respondent is less than the amount that was then due to said Central Consumers' Company by said Vocke on account of said two advances made by said company to said Vocke to pay for said licenses.

"Wherefore, having fully responded to the said order, the respondent prays that this, its response, be adjudged sufficient, and that it be relieved of further attendance on the court."

The general question presented upon the rule and the response thereto was whether the latter was sufficient in law. This question was argued before the referee, who thereafter, pursuant to a written opinion filed, entered an order as follows:

"At Louisville, in said district on the 20th day of December, 1916, this matter having been heretofore submitted to the court as to the sufficiency of the response by Jul's Café to the order entered herein requiring it to show cause why it should not turn over to the trustee herein the licenses mentioned in said order, and the court, now being advised, delivered a written opinion which is now filed herein and made part of the record in this proceeding, and pursuant to said opinion, it is now ordered and adjudged by the court that the assignments by the bankrupt herein to the Central Consumers' Company of the state license issued to him in May, 1916, and the city license issued to him, in August, 1916, are void and of no effect, and that said Central Consumers' Company took no interest therein, or lien upon the said licenses by such assignments, and that the transfer of said licenses to the said respondent, Jul's Café, by Charles P. Dehler, who is secretary of said Central Consumers' Company, under and by virtue of the powers of attorney executed and delivered to said Dehler the secretary of said Central Consumers' Company, is null and void and of no effect. It is further ordered and adjudged that at the time of the adjudication herein, and at the time of the transfer of said licenses by said Central Consumers' Company by virtue of said powers of attorney to said Charles P. Dehler, said licenses were the property of and belonged to this estate, free from any right, title, interest, or lien of the Central Consumers' Company, and that, upon his election and qualification as trustee herein, A. R. Cooper, as such trustee, became vested with all of the right, title, and interest of the bankrupt in said licenses, subject to such limitations imposed by law free from any such right, title, interest or lien of the Central Consumers' Company, together with all the powers or privileges granted to the bankrupt by virtue of said licenses subject as aforesaid to such limitations imposed by law. It is therefore ordered and adjudged by the court that the response filed herein by said Jul's Café to the said order mentioned herein be and the same is now adjudged insufficient, and said Jul's Café is now ordered and directed to turn over and deliver to A. R. Cooper, trustee, said state and city licenses referred to herein."

Both the Jul's Café and the Central Consumers' Company (the latter was a creditor of the bankrupt, but had not been a party to the proceedings under the rule) joined in a petition for a review by the court of the order of the referee requiring the Jul's Café to surrender the licenses. If this were a plenary action between proper parties in interest, several interesting and possibly far-reaching questions might be raised for decision under the state and municipal laws of Kentucky, if we may so separately designate them. Some of those questions might be:

1. Whether the original licenses issued to the bankrupt were transferable, even under the circumstances stated in the response?

2. If transferable even to a limited extent, what interest, legal or equitable, did the respondent acquire in them?

3. What was the effect of the surrender of the old licenses and the issuance of new ones in their stead?

4. The trustee does not show that he made any claim to the leased premises under the lease, nor that either himself or the creditors manifested any desire or purpose to conduct the saloon business there in succession to the bankrupt under the licenses. Under these circumstances what, if any, interest does the trustee have in those documents or the rights or privileges they confer?

5. It appears from the response that the bankrupt, not being able otherwise to secure the money for paying for the licenses, obtained it from the Central Consumers' Company, and to secure its repayment indorsed on them, respectively, certain powers of attorney to sell and receive the money and to repay the Central Consumers' Company what it had advanced to pay for them. In this state of fact, what interest, legal or equitable, did the Central Consumers' Company acquire by these indorsements?

6. What was the surrender value of the licenses at the time of the adjudication, and was the trustee entitled to the whole or any part of that value, and, if so, who owed it to him? Did the Jul's Café or the Central Consumers' Company owe the money to the trustee? In this connection it might also be a question as to whether any right of action by the trustee would exist, in the absence of a claim by the trustee of the right of occupancy of the leased premises, in such way as to make valuable the right to the licenses under which to operate a saloon.

[1] Certainly these are interesting and important questions, to be determined by the law of Kentucky, and upon the record we may at this stage determine whether the claim of Jul's Café to the licenses is fairly to be considered an adverse one, or is it one that is merely colorable? Considering that question, we think it cannot be held, on the face of the record, that its claim to the papers is merely colorable. On the contrary, it is manifestly an adverse claim. That being so, we think the questions we have indicated, and others which might arise upon the facts shown by the record, should be tried out in a plenary action, and not in a summary proceeding like the one adopted by the trustee. This seems to be clear from authorities like Courtney v. Shea (C. C. A. 6th Cir.) 34 Am. Bankr. R. 753, 225 Fed. 361, 140 C. C. A. 382; 1 Loveland on Bankruptcy, § 36, p. 122; In re Mimms & Parham (D. C. Ky.) 27 Am. Bankr. R. 469, 193 Fed. 276; In re Yorkville Coal Co. (C. C. A. 2d Cir.) 33 Am. Bankr. R. 633, 211 Fed. 619, 128 C. C. A. 570; In re Rathman (C. C. A. 8th Cir.) 25 Am. Bankr. R. 246, 183 Fed. 913, 106 C. C. A. 253; Collier on Bankruptcy (10th Ed.) 476, 489.

[2] Coming now to the question more directly involved on this petition for review, we think the referee was in error in holding that the response to the rule was insufficient. Upon the facts shown we think it was a good response to the rule—the summary process—to say in the manner shown that the licenses issued to the bankrupt were not in

possession of the respondent, that the respondent claimed as its own those which were in its hands, that those issued to the bankrupt had been surrendered to the state and city of Louisville, respectively, and that the licenses to do business at the place indicated had been transferred to the Jul's Café. It appearing that the licenses issued to the bankrupt had been surrendered by the respondent and were not in its possession, a rule to surrender them becomes a vain thing, because the corporation could not be punished for contempt for not surrendering what it did not have the power to surrender.

[3] The real questions are those hereinbefore suggested, or similar ones, and their settlement must be obtained, not in a summary proceeding, but in a plenary action, or by some adjustment between the parties in interest. Whether the respondent is bound to surrender any licenses issued to it in its own name or otherwise in substitution for the original licenses to the bankrupt is a question to be determined in a plenary action, inasmuch as respondent makes an adverse claim to them which obviously is not merely colorable. When this situation developed, the referee should have discharged the rule, as he had no jurisdiction to determine such issues. Courtney v. Shea (C. C. A. 6th Cir.) 34 Am. Bankr. R. 753, 225 Fed. 361, 140 C. C. A. 382.

A decree will be entered, reversing the order sought to be reviewed, and the referee will be directed to discharge the rule to show cause, but without prejudice to the rights of the trustee to bring any appropriate action to enforce his rights as he may be advised.

A decree accordingly may be entered